UNITED STATES of America,
Appellant,

v.

SCHECTER, Jamal I., Appellee.

No. 82–5672.

United States Court of Appeals,
Third Circuit.

Argued June 15, 1983.

Decided Sept. 26, 1983.

W. Hunt Dumont, U.S. Atty., Samuel Rosenthal, Chief, Appeals Div., Asst. U.S. Atty. (argued), Newark, N.J., for appellant.

David A. Ruhnke, Federal Public Defender (argued), Newark, N.J., for appellee.

Before HUNTER and HIGGINBOTHAM, Circuit Judges, and GILES, District Judge.*

**OPINION OF THE COURT**

A. LEON HIGGINBOTHAM, Jr., Circuit Judge.

The government appeals from a district court order granting appellee's motion to suppress an inculpatory statement and evidence of stolen goods stemming from an allegedly illegal search of an automobile that was within the appellee's exclusive control. Because we believe that the police conducted a legal auto search, we will reverse the district court's order suppressing the evidence of stolen goods and vacate the

* Honorable James T. Giles, United States District Court for the Eastern District of Pennsylvania, sitting by designation.

order suppressing the inculpatory statement.

## FACTS

On the night of December 28, 1981, appellee, Jamal I. Schecter,[1] drove a borrowed auto off the highway and into some fencing. He was eighteen years old. Two New Jersey State Troopers arrived at the scene of the accident at approximately 10:30 P.M., shortly after the accident had occurred. Schecter did not sustain any physical injuries, but the state troopers found him stumbling about the auto and speaking in a slow, slurred, rambling and incoherent manner. Schecter informed the troopers that he had been taking methamphetamines for three days and that he had purchased $10 worth of cocaine earlier that day, at least some of which he ingested two hours prior to the accident. The "psycho-mental evaluation tests" the trooper administered to Schecter revealed that he was in a state of substantial drug intoxication. Consequently, the troopers arrested Schecter for driving while under the influence of drugs.

While they awaited the arrival of a truck to tow the auto Schecter was driving to the police barracks, the troopers searched the auto. One of the troopers saw in the front seat floor area a closed bottle containing a white crystalline substance. The bottle bore the label "Psuedocaine, An Incense." Tests performed days after Schecter's arrest determined that the bottle's contents were not an illegal controlled substance. The trooper also discovered on the auto's back seat approximately twenty boxes of "brand new packaging" labelled cologne and perfume. The other trooper testified that she could see these boxes in "plain view" while looking inside the auto from the highway. The trooper conducting the interior search of the auto removed the car keys from the ignition and opened the trunk where he found forty-nine men's suits individually wrapped in clear plastic bags. When the troopers asked Schecter to explain the presence of this merchandise, Schecter told them that they belonged to the auto's owner who was a salesman and distributor of men's clothing.

The state troopers drove Schecter to the police barracks. Schecter telephoned the owner of the auto and said that the owner would come down to the police barracks within an hour. However, the owner never arrived. The troopers testified that, four hours after the highway search, they inventoried the auto's contents as is their practice. This search yielded an invoice or packing list which contained the name of a company from which the troopers subsequently learned that the suits had been stolen from an interstate shipment of merchandise. Later that morning a state officer and two F.B.I. agents informed Schecter of his *Miranda* rights, and, after telling Schecter that they knew the goods had been stolen, the agents questioned him. Schecter later signed an inculpatory statement.

A federal grand jury indicted Schecter for possession of and for conspiracy to possess goods stolen from an interstate shipment of merchandise in violation of 18 U.S.C. §§ 2, 371 and 659. Schecter pled not guilty to these charges, repudiated his inculpatory statement and entered a motion to suppress his statement as well as the evidence found by the troopers in their search of the auto.

The district court granted Schecter's motion to suppress. It found that the troopers' warrantless searches of the auto were illegal because the troopers did not have probable cause to believe that the auto contained contraband or illegal merchandise.[2]

---

1. The docket entries and the complaint refer to appellee as "Schecter," but the district court's opinion refers to him as "Schechter." We are using the spelling used in the indictment and docket entries.

2. At the suppression hearing, the government raised the separate issue of Schecter's voluntary consent to the highway search. The troopers testified that Schecter gave his consent after they asked to search the auto. The district court appropriately found that Schecter's state of substantial drug intoxication prevented him from voluntarily consenting to the search. This issue was not appealed and is not before us.

The district court reasoned that Schecter's state of drug intoxication and his statements concerning his purchase and ingestion of cocaine and methamphetamines "provide a most fragile of foundations for a search of the car. Surely they provided the officers with no direct objective facts that the car was transporting illicit drugs." Appellant's Appendix ("App.") at 147.

Additionally, the district court found that the bottle containing the white crystalline substance did not provide the troopers with probable cause to search the auto. The court assumed that Schecter had consumed the entire quantity of cocaine he had purchased earlier and therefore concluded that "[t]here were no [objective] facts that would constitute probable cause to believe that any amount of drugs beyond the amount found in the bottle [was] secreted in the car." Id. at 148.

The district court similarly found that "the police completely lacked knowledge of any objective facts to give probable cause to believe that the suits and cologne were stolen." Id. The court asserted that the mere presence in the auto of the cologne and clothing did not in itself give the troopers probable cause to suspect that this merchandise was stolen. Rather, the "search uncovered such facts. But the facts were not known prior to the search." Id. (Emphasis in original.)

The government argued that the auto search at the police barracks was authorized as an inventory search. The district court rejected this contention for two reasons. First, the court declared that, "[t]o bring the search at [the police barracks] within the inventory exception, the Government must show that the search was not investigative." Id. at 149. One of the troopers had testified that her purpose for this search was not only to inventory the auto's contents but also to look for additional evidence. Second, the court found that the troopers inventoried only the stolen goods. Noting the police's admission of an investigatory purpose, plus the failure to record anything but a list of the suspicious goods, the court found that the second search at the police barracks "cannot come within the non-investigatory mantle of the inventory search." Id.

The district court granted Schecter's motion to suppress evidence holding that the highway search and the police barracks search of the auto were illegal because they come "within no recognized exception to the warrant requirement." Id. Moreover, the court found that Schecter's inculpatory statement was derived from the discovery of the stolen merchandise and was therefore the result of the illegal search of the auto. Consequently, the court held that the "inculpatory statement of the defendant is a fruit of the illegal search and must be suppressed." Id.

The government asks this court to reverse the district court's order granting Schecter's motion to suppress evidence.

## DISCUSSION

The legality of the troopers' auto search presents mixed questions of law and fact. The government asks us to determine that the district court erred as a matter of law in holding that the state troopers' warrantless search of the auto was illegal. It also asks us to determine that the district court was clearly erroneous in finding that the objective facts in this case failed to present the troopers with probable cause to suspect that the auto contained contraband.

The government offers three theories in support of its position. It argues that the state troopers were authorized to search the auto without a warrant as a lawful search incident to Schecter's arrest. Second, the government argues that the search was authorized under the automobile exception to the warrant requirement because objective facts existed that presented the troopers with probable cause to suspect that the auto contained contraband. Finally, the government insists that the inventory search at the police barracks should not be invalidated simply because the trooper conducting the search was partially motivated to make the inventory search by her expectation of finding contraband.

We find that the troopers conducted a legal search of the passenger compartment[3] as a search incident to a lawful arrest. We believe that Schecter's state of drug intoxication and statements relating to his purchase and consumption of illegal drugs together with the bottle containing the white crystalline substance presented the troopers with probable cause to suspect that the auto contained additional drugs. Therefore, we find that the troopers conducted a legal search of the trunk of the auto under the automobile exception to the warrant requirement. The following discussion will explain why we reach these conclusions.

### Search Incident to a Lawful Arrest

The court below explicitly held that the state troopers' search of the passenger compartment of the auto was not justified as a search incident to a lawful arrest under the recently decided case of *New York v. Belton,* 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981). The district court interpreted *Belton* as holding that such searches are lawful only if the facts and circumstances present to the arresting officer "reason to suspect" that the auto contains "evidence, instrumentalities, or fruits of a crime." App. at 152. Quoting *Warden v. Hayden,* 387 U.S. 294, 307, 87 S.Ct. 1642, 1650, 18 L.Ed.2d 782 (1967), the district court further declared that "there must be a *nexus,* automatically provided in the case of fruits,

instrumentalities, or contraband—between the item seized and the criminal behavior.' " *Id.* (Emphasis in original.) It concluded that this nexus was present in *New York v. Belton, supra,* but was absent in this case.

Although the district court's analysis of *New York v. Belton, supra,* is thoughtful, we read the Supreme Court's opinion in that case differently than does the district court.[4] Prior to *Belton,* the Supreme Court regarded the " 'exigencies of the situation' " relating to an arrest as sometimes "mak[ing] exemption from the warrant requirement 'imperative.' " *Id.* 453 U.S. at 457, 101 S.Ct. at 2862, *quoting McDonald v. United States,* 335 U.S. 451, 456, 69 S.Ct. 191, 193, 93 L.Ed. 153 (1948). Such exigencies arose from the danger of an arrestee gaining possession of a weapon that might be used against the arresting officer or destroying evidence of the crime for which he was being arrested. *Chimel v. California,* 395 U.S. 752, 763, 89 S.Ct. 2034, 2040, 23 L.Ed.2d 685 (1969). Consequently, the scope of a search incident to a lawful arrest was limited to the "area 'within [the arrestee's] immediate control'—construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence." *Id.*

*New York v. Belton, supra,* involved a warrantless police search of an auto's passenger compartment incident to a lawful

---

**3.** The Supreme Court and the district court use the term "passenger compartment" to refer to the interior of the auto—the seats and floor areas. The "passenger compartment" is not to be equated with the glove compartment.

**4.** As our discussion will show, we agree with Professor Yale Kamisar's reading of *New York v. Belton,* 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981) when he wrote:

*Belton* is based on the rationale that because an arrested occupant will *often* be able to reach into the passenger compartment to grab a weapon or some evidentiary item, rather than hammer out the reach or lunge of the occupant under the facts of each case we will make life simple for the officer and allow him to make a contemporaneous search of the passenger compartment incident to arrest *in all cases.* (Emphasis in original.)

Kamisar, *United States v. Ross: The Court Takes Another Look at the Container-in-the-*

*Car Situation,* in 4 THE SUPREME COURT: TRENDS AND DEVELOPMENTS, 71.93 (J. Choper, Y. Kamisar & L. Tribe eds. 1983). Professor Kamisar identified a dangerous possibility presented by this rationale:

Under the *Belton* rule, ... even though there is no reason to believe that anything more than a traffic violation has occurred, an officer who sees an interesting looking briefcase or package in a vehicle stopped for a traffic violation may choose to arrest the driver in order to obtain justification for a search of *the entire passenger compartment of the car* including containers found therein. Thus, as [Justice] Stevens pointed out, the *Belton* rule ... permits the police to make *broader* vehicle searches than any magistrate could authorize by issuing a search warrant. (Emphasis in original) (footnote omitted.)

*Id.* at 92.

arrest while the auto's passengers were standing on the highway. From the highway, the arresting officer detected the odor of burnt marijuana emanating from the auto and saw on the floor of the passenger compartment a package which he had cause to believe contained marijuana. He ordered the occupants to get out of the car and placed them under arrest for unlawful possession of marijuana. After a body search of each of the passengers, the arresting officer searched the auto's passenger compartment, and he found that the package contained marijuana. He also discovered cocaine in an unzipped pocket of a jacket on the back seat.

The Supreme Court upheld the legality of this search. It held that the police may, incident to a lawful custodial arrest, search without a warrant the passenger compartment of an automobile even though its passengers are standing outside of it. It also held that the police may "examine the contents of any containers found within the passenger compartment," *New York v. Belton,* 453 U.S. at 460, 101 S.Ct. at 2864, because "the lawful custodial arrest justifies the infringement of any privacy interest the arrestee may have." *Id.* at 461, 101 S.Ct. at 2864.

The Supreme Court intended to clarify whether, "in the course of a search incident to the lawful custodial arrest of the occupants of an automobile, police may search inside the automobile after the arrestees are no longer in it." *Id.* at 459, 101 S.Ct. at 2863. Noting "that articles inside the relatively narrow compass of the passenger compartment of an automobile are in fact generally, even if not inevitably, within 'the area into which an arrestee might reach in order to grab a weapon or evidentiary ite[m],'" *id.* at 460, 101 S.Ct. at 2864, *quoting Chimel v. California,* 395 U.S. at 763, 89 S.Ct. at 2040, the Court held "that when a

policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile." *New York v. Belton,* 453 U.S. at 460, 101 S.Ct. at 2864 (Footnotes omitted.)

As we interpret the Supreme Court, the district court in this case erred in holding that the troopers' search of the passenger compartment of the auto was not a permissible search incident to a lawful arrest. The district court held incorrectly that the search was illegal because there was no nexus [5] "between the item to be seized and criminal behavior." App. at 152, quoting *Warden, Maryland Penitentiary v. Hayden,* 387 U.S. 294, 307, 87 S.Ct. 1642, 1650, 18 L.Ed.2d 782 (1967). This nexus, however, has never been required to justify an auto search incident to a lawful arrest. Under *New York v. Belton, supra,* such a search is permissible whenever it is made in conjunction with and contemporaneous to a lawful arrest of the auto's occupants.

▮ In the instant case, the state troopers had lawfully placed Schecter under arrest for driving while under the influence of drugs. They searched the passenger compartment at the accident site "as a contemporaneous incident of that arrest." *Id.* 453 U.S. at 460, 101 S.Ct. at 2864. Consequently, the troopers' highway search of the auto's passenger compartment was a lawful search under *New York v. Belton, supra.*

### The Automobile Exception to the Warrant Requirement

▮ The Supreme Court specifically excluded trunk searches from its decision in *New York v. Belton. Id.* at 460–61, n. 4, 101 S.Ct. at 2864, n. 4. *Belton* does not provide authority for the troopers' search of the trunk and discovery of the stolen suits.

---

**5.** At another point in his letter opinion discussing *New York v. Belton, supra,* the district judge distinguishes *Belton* from the instant case because of the presence in *Belton* of "probable cause to search and seize the jacket and its contents." App. at 152. He may have inadvertently used "probable cause" as a syno-

nym for "nexus." However, we need not consider here the question of probable cause because a showing of probable cause is not required to justify the search of an auto's passenger compartment when the search is incident to a lawful arrest.

The government argues that the automobile exception to the general warrant requirement offers such authority. We agree.

The Supreme Court long ago established the automobile exception to the warrant requirement when it declared that a warrantless search of an automobile by a police officer who has "reasonable or probable cause for believing that the automobile which he stops ... has contraband ... therein ..." does not offend the Fourth Amendment. *Carroll v. United States,* 267 U.S. 132, 156, 45 S.Ct. 280, 286, 69 L.Ed. 543 (1925). Just last year the Court "consider[ed] the extent to which police officers ... may conduct a probing search of compartments and containers within the vehicle whose contents are not in plain view" under this automobile exception. *United States v. Ross,* 456 U.S. 798, 800, 102 S.Ct. 2157, 2160, 72 L.Ed.2d 572 (1982). The Court held

> that the scope of the warrantless search authorized by [this] exception is no broader and no narrower than a magistrate could legitimately authorize by warrant. If probable cause justifies the search of a lawfully stopped vehicle, it justifies the search *of every part of the vehicle* and its contents that may conceal the object of the search. (Emphasis added.)

*Id.* at 825, 102 S.Ct. at 2172. The Court also stressed that "the probable-cause determination must be based on objective facts that could justify the issuance of a warrant by a magistrate and not merely on the subjective good faith of the police officers." *Id.* at 808, 102 S.Ct. at 2164.

In a case just decided in June 1983, the Supreme Court more precisely defined the nature of "probable cause" required of a magistrate who issues a search warrant. *Illinois v. Gates,* —— U.S. ——, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). The Court declared that

> [t]he task of the issuing magistrate is simply to make a practical, common sense decision whether, given all the circumstances ..., there is a fair probability that contraband or evidence of a crime will be found in a particular place.

*Id.* at ——, 103 S.Ct. at 2348. The Court also articulated the standard of review of the magistrate's determination:

> the duty of a reviewing court is simply to ensure that the magistrate had a "substantial basis for ... conclud[ing]" that probable cause existed.

*Id.,* quoting *Jones v. United States,* 362 U.S. 257, 271, 80 S.Ct. 725, 736, 4 L.Ed.2d 697 (1960).

Using this practical common sense approach to determine probable cause, we must decide whether the circumstances of the search in this case presented the state troopers with a substantial basis on which they could have concluded that there was a fair probability they would discover contraband in the auto. If the state troopers in the case before us legally could have conducted a highway search of the auto under the automobile exception, they legally could have searched the passenger compartment and the trunk. The automobile exception provides legal authority justifying the troopers' highway search of the trunk if they had probable cause to believe that the auto contained contraband. Thus, we must determine whether the district court was clearly erroneous in finding that the troopers lacked probable cause.

The district court found that the circumstances of the arrest and search did not present objective facts to support the belief that the auto contained drugs or stolen goods. App. at 140, 146–49. The court found that the only evidence tending to show that Schecter may have had illegal drugs in the auto was his admission of having purchased $10 worth of cocaine. *Id.* at 140. The court dismissed this evidence by finding that Schecter had "snorted" *all* of the cocaine which gave rise to the inference that Schecter did not have any drugs in the auto. *Id.* at 147.

The district court's findings in this regard are clearly erroneous for two reasons. First, the testimony of record does not support the court's finding that Schecter had "snorted" *all* of the cocaine. It only shows that Schecter had snorted an unknown amount of the cocaine. *Id.* at 10, 42, 51.

Consequently, the troopers could have reasonably concluded that there was a fair probability that Schecter still had some cocaine in the auto.

Second, the trooper who discovered the bottle containing a white crystalline substance in the auto reasonably could have believed the bottle may have contained methamphetamine, cocaine or some other controlled substance. *Id.* at ——, 103 S.Ct. at 2348. He found this bottle pursuant to a lawful search of the passenger compartment incident to a lawful arrest. The district court concluded that this bottle represented the only evidence that the auto might have contained drugs. Consequently, its discovery, the court reasoned, eliminated "[w]hatever probable cause justification might have been supplied by" Schecter's state of substantial drug intoxication. *Id.* at 148.

We disagree. The circumstances of Schecter's arrest gave rise to a fair probability that he had drugs in the auto. He was in a state of substantial drug intoxication; he had been high on methamphetamines for three days; he had purchased $10 worth of cocaine and had consumed an unknown amount of it two hours before his arrest. In these circumstances the bottle of white crystalline substance, like the marijuana in *New York v. Belton, supra,* represents another objective fact from which the troopers reasonably could have believed there were drugs in the auto. We find, therefore, that the objective facts of the case present a "substantial basis"[6] for finding that probable cause existed, that there was a "fair probability"[7] that the troopers would find additional drugs in the auto.[8] Their search of the passenger compartment and the trunk was legally justified under the automobile exception defined in *Carroll v. United States, supra,* and *United States v. Ross, supra.*

The troopers' search of the trunk revealed forty-nine men's suits. They had already discovered approximately twenty new boxes of cologne and perfume on the back seat in plain view from the highway. The district court found that

the police completely lacked knowledge of any objective facts to give probable cause to believe that the suits and cologne were stolen. The *search* [at the police barracks] uncovered such facts. But the facts were not known prior to the search.

App. at 148. (Emphasis in original.) The court therefore held "that the automobile exception cannot apply to the search at [the police] Barracks, for the police lacked probable cause to search for contraband." *Id.* at 148–49. It concluded that the troopers' discovery of the packing slip that ultimately led to their discovery that the cologne, perfume and suits were stolen goods was the product of an illegal search.

We again believe that the district court erred as a matter of law. We have already concluded that the troopers were authorized to conduct a highway search of the auto under the automobile exception to the warrant requirement. The suits were discovered pursuant to this search. The cologne and perfume had already been seen in plain view by one of the troopers from the highway. We believe that the presence of such a large quantity of these articles in light of Schecter's state of drug intoxication, his inability to account for these items, *id.* at ——, 103 S.Ct. at 2329, and the failure of the auto's owner to show up at the police barracks to claim the auto and the goods provided the troopers with probable cause to suspect that the merchandise was stolen.

Moreover, the search at the police barracks was authorized under the automobile exception even without relying on the presence of the stolen goods. The Supreme Court has extended the span of time within

---

**6.** *Illinois v. Gates,* —— U.S. ——, ——, 103 S.Ct. 2317, 2348, 76 L.Ed.2d 527 (U.S.1983).

**7.** *Id.*

**8.** Candidly, we share Justice White's concern that this formulation "may foretell an eviscera-

tion of the probable cause standard...." *Id.* at ——, 103 S.Ct. at 2350 (White, J. dissenting). Nevertheless, this formulation is the standard which we have been instructed by the Supreme Court to apply.

which a warrantless search may be conducted by the police under the automobile exception. *Michigan v. Thomas,* 458 U.S. 259, 102 S.Ct. 3079, 73 L.Ed.2d 750 (1982). The Court held that, under this exception, "the officers may conduct a warrantless search of the vehicle, even after it has been impounded and is in police custody." *Id.* at 3081. It explained that the justification for the warrantless search was the probable cause to believe that contraband was inside the automobile. Therefore, the Court declared,

> the justification to conduct a warrantless search does not vanish once the car is immobilized; nor does it depend upon a reviewing Court's assessment of the likelihood in each particular case that the car would have been driven away, or that its contents would have been tampered with, during the period required for the police to obtain a warrant.

*Id.* Since the troopers were authorized to search the auto under the automobile exception, they legally could search it even after they had impounded it. Therefore, the search that produced the packing slip which led to the discovery that the merchandise was stolen was a legal search under the automobile exception. Since we find that the troopers' search of the auto at the police barracks was authorized under the automobile exception, we do not have to decide whether this search was also a proper inventory search.

### The Inculpatory Statement

The final issue before us is whether the district court erred in suppressing Schecter's inculpatory statement. The district court found that the inculpatory statement was derivative of the illegal search. Consequently, the court excluded the inculpatory statement as "'fruit of the poisonous tree.'" App. at 150, quoting *Nardone v. United States,* 308 U.S. 338, 341, 60 S.Ct. 266, 268, 84 L.Ed. 307 (1939).

The district court's exclusion of Schecter's inculpatory statement because it was the product of an illegal search must be set aside. Our finding that the auto search was a legal search eliminates the predicate of the district court's order.

The district court found that "[o]verwhelming evidence shows [Schecter] to have been in a substantial state of intoxication at the time" of his arrest. App. at 143. However, the lower court made no finding as to Schecter's condition hours later when he gave his inculpatory statement. We therefore make no ruling as to the admissibility of the inculpatory statement on other grounds and remand to the district court for such finding.

### CONCLUSION

For the foregoing reasons the district court's order granting Schecter's motion to suppress evidence of stolen goods will be reversed and the suppression of the inculpatory statement will be vacated. The case will be remanded for further proceedings consistent with this opinion.