675 P.2d 697

**STATE of Arizona, Appellee,**

v.

**Daniel Anthony CRIVELLONE,
Appellant.**

No. 5681.

Supreme Court of Arizona,
In Banc.

Dec. 2, 1983.

**438**

Robert K. Corbin, Atty. Gen. by William J. Schafer III and Robert S. Golden, Asst. Attys. Gen., Phoenix, for appellee.

Irwin, Jensen & Irwin, P.C. by Bruce A. Jensen, Yuma, for appellant.

CAMERON, Justice.

This is an appeal from convictions of murder in the first degree, A.R.S. §§ 13–1101 and 13–1105; attempted armed robbery, A.R.S. §§ 13–1904 and 13–1001; conspiracy to commit armed robbery, A.R.S. §§ 13–901 and 13–902; concurrent sentences thereon of life without possibility of parole for twenty-five years for the first degree murder, A.R.S. § 13–703; fourteen years for the attempted armed robbery, A.R.S. § 13–701; and fifteen years for the conspiracy to commit armed robbery, A.R.S. § 13–701. We have jurisdiction pursuant to A.R.S. §§ 13–4031 and 13–4035.[1]

We must answer the following questions on appeal:

1. Was it error for the trial court to deny defendant's motion to suppress the evidence seized from the defendant's motor vehicle after defendant's arrest?

2. Was it reversible error for the trial court to deny defendant's motion to suppress the statements made by the defendant after his arrest?

3. Was it reversible error for the trial court to permit the statements of the victim into evidence over defendant's objections?

4. Was it reversible error for the trial court to refuse to allow codefendant Edward Hein to state his opinion as to whether the shooting was intentional or accidental?

5. Was it reversible error for the trial court to deny defendant's requested jury instructions relating to second degree murder and manslaughter?

The facts necessary for a determination of this matter are as follows. Defendant, a juvenile, and his codefendant Edward Hein, lived in Oregon. They had not had difficulty with the law before. They robbed codefendant Hein's father's home taking a .22 caliber handgun, stole defendant's parents' car, and on 13 April 1982 left for Los Angeles. By 15 April they had arrived at Blythe, California, and were in need of cash. That evening they went to a Circle K convenience market in Blythe and started to play video games. The store clerk noted what appeared to be a gun barrel or tire iron sticking out of one of the youth's sleeves. The clerk called the police, and the two youths, upon seeing the clerk on the telephone, left the store. The clerk noted the Oregon license plate number, KTA–548, as the two youths drove away.

In the early morning hours of 16 April 1982, the defendants went to a Circle K convenience market in Ehrenberg, Arizona, directly across the Colorado River from Blythe, California. They paid for their purchase with a twenty-dollar bill, and after the manager of the market gave them their

---

1. No oral argument having been requested, this matter was ordered submitted on the briefs on 23 February 1983. Due to an oversight in the Clerk's Office of this court, it was not assigned for decision and opinion until 29 September 1983.

change and closed the register, the defendant shot the manager. This was followed by an unsuccessful attempt to open the cash register, after which the defendants left the premises.

Before dying, the manager indicated to an officer from the Riverside County (California) Sheriff's Department that the defendants were two young, white males. Officer Michael Newman of the Yuma County (Arizona) Sheriff's Office, later arrived and continued the investigation. Evidence obtained by Officer Newman from law enforcement personnel in California and others indicated the robbers were juveniles driving a two-tone Chevrolet automobile with Oregon plates, No. KTA–548. The parents of both Hein and the defendant were contacted, and bulletins were sent to nearby states advising that the two were suspects in a robbery-murder and were presumed armed and dangerous.

Two days later on 18 April, in Las Vegas, Nevada, Officer Martin Lehtimen of the Las Vegas Metropolitan Police Department observed a two-tone Chevrolet automobile with Oregon license No. KTA–548. He confirmed the license plate number from his "hot sheet" with the radio dispatcher. He was advised by the dispatcher that the occupants of the vehicle were presumed armed and dangerous. After requesting assistance from additional police units, he stopped the suspect automobile in the parking lot of the Dunes Hotel and ordered the occupants out of the car. The defendant was the driver.

Defendant was arrested and taken to Yuma County where he was jointly tried with the codefendant Hein and convicted. From the convictions, judgments, and sentences he appeals.

## I

## MOTION TO SUPPRESS EVIDENCE TAKEN FROM THE AUTOMOBILE

Defendant first contends that the trial court erred in not suppressing evidence of the gun taken from the Chevrolet after the arrest. We do not agree. After stopping the automobile, the police officers, shielding themselves with the open doors of their patrol cars and with shotguns pointed, ordered the defendant and his companion out of the vehicle. They were ordered to lie on the ground, which they did, and were then handcuffed. While frisking the codefendant Hein, Officer Kenneth Hefner asked where the gun was, to which Hein responded, "in the car under the seat." The gun was located under the front passenger seat and was seized along with a box of .22 caliber ammunition found in the glove compartment.

■ We believe that the search was valid as incident to a lawful arrest. The officer in Nevada had the right to rely on the "hot sheet" and the instructions from the dispatcher. See *Whitely v. Warden, Wyoming State Penitentiary,* 401 U.S. 560, 568, 91 S.Ct. 1031, 1037, 28 L.Ed.2d 306, 313 (1971) (officers allowed to rely on information in radio bulletin). The information possessed by Officer Newman was sufficient to support a finding of probable cause for an arrest. See *State v. Hein,* 138 Ariz. 360, 674 P.2d 1358 (1983) on this same point raised by the codefendant on appeal. The search of the automobile was therefore a search incident to a valid arrest. In a case in which the occupants of an automobile were arrested and removed from the automobile and the automobile searched, the United States Supreme Court has stated:

> Accordingly, we hold that when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile.

*New York v. Belton,* 453 U.S. 454, 460, 101 S.Ct. 2860, 2864, 69 L.Ed.2d 768, 775 (1981) (footnotes omitted). The arrest was lawful, and therefore searching the automobile for the gun which the officer had reason to believe was present in the automobile, was also lawful. *New York v. Belton,* supra.

## II

## DEFENDANT'S STATEMENTS

Immediately after being handcuffed, defendant was placed in a patrol vehicle by

Officer Lehtimen. He was advised of his rights, and asked if he understood them, to which the defendant answered "yes." According to the officer, no questions were asked at this time. Defendant contends Officer Lehtimen questioned him while on the way to the police station, and asked, "Why did you kill him?" Defendant also claims Officer Lehtimen told him that if he had committed the crime in Nevada, he would "get" the death penalty. If defendant did make any statements at this time, they were not introduced into evidence. Later two taped interviews were conducted by Detective David Hatch, homicide investigator with the Las Vegas Metropolitan Police Department. During the first interview the defendant denied any involvement in the crime. A short time later, at defendant's request, he was interviewed again. In the second interview, the defendant admitted involvement. This statement was admitted into evidence at trial.

On 18 April 1982, Officer Newman of the Yuma County Sheriff's Office, after reading defendant his Miranda rights, interviewed defendant in an interview room of the Las Vegas Metropolitan Police Department. Again defendant admitted involvement in the crime. This confession was also admitted into evidence at trial.

■ Defendant claims all the statements made to the police should have been suppressed. Defendant also claims that the police failed to comply with A.R.S. § 8–223, which he contends requires notification of a juvenile's parents when the juvenile is taken into custody. The Arizona authorities had been in touch with the parents of the two defendants prior to arrest, but there is no evidence that the law enforcement officials notified the parents immediately after the arrest. We do not agree with the defendant's position. First, even if the statute applies, we note that the initial arrest was made in Nevada by Nevada officers, and we can assume that they followed the procedures required by the State of Nevada during the arrest of the juvenile. We cannot assume that they were aware of the Arizona statute governing the arrest of

juveniles, and we will not charge the officers with the responsibility of complying with a statute of which they may not have been aware.

■ A.R.S. § 8–223(C) requires a peace officer to take certain steps when a juvenile is taken into protective custody, including notification of the juvenile's parents within 6 hours. This was an arrest. The defendant was not taken into custody for protection under A.R.S. §§ 8–223(A)(3) or 8–223(B)(2). The statute does not apply. Also we have noted:

> The presence of the child's parents or their consent to a waiver of rights is only *one* of the elements to be considered by the trial court in determining that the statement was voluntary and the child intelligently comprehended his rights.

*State v. Hardy,* 107 Ariz. 583, 584, 491 P.2d 17, 18 (1971) (emphasis in original). See also *State v. Jackson,* 118 Ariz. 270, 272, 576 P.2d 129, 131 (1978). Looking at the totality of the circumstances, the finding by the trial judge that the statements were voluntary is amply supported by the record. See also *State v. Hein,* supra.

■ Defendant also contends that the statements were involuntary as a result of the threats made against him. The only evidence of threats made to the defendant came from his testimony at the voluntariness hearing. None of the police officers who testified admitted the existence of threats made to the defendant. The judge weighed the evidence and did not find any threats were made. We will not upset a finding of admissibility absent clear and manifest error. *State v. Arnett,* 119 Ariz. 38, 42, 579 P.2d 542, 546 (1978). We find no error.

### III

### ADMISSION OF RUSSELL McKENZIE'S STATEMENTS

Officer Louis Ferreira, a Deputy Sheriff with the Riverside County Sheriff's Department, testified that in the early hours of 16 April 1982 he received a call that there was a "man down" at the Circle K in Ehren-

berg, Arizona. He testified that he had medical training in the military and had seen people in shock many times, and in the instant case was able to communicate with the victim. He further testified:

Q When you were with Mr. McKenzie [the victim] there behind the counter, did you have a discussion with him as to how it was that he was shot?

A Yes, affirmative. I asked him, my first question was, "How many were there?" And at this time for some reason he couldn't speak or he didn't want to speak, so he stretched out his left arm and made a sign of two. Then I asked him if they were white, if the suspects were white, and he nodded his head affirmative. Then I asked him if they were old, and he nodded his head in the negative. And then I asked him if they were young, and he nodded his head affirmative.

Q Was that the extent of the information you could get from him?

A Yes, I asked him, inquiring about the vehicle, license plate. He couldn't say anything more.

Defendant contends that these were hearsay statements and were therefore inadmissible. The interpretations of the victim's assertive conduct (Rule 801(a), Arizona Rules of Evidence, 17A A.R.S.) was, of course, hearsay. The question is whether one or more of the various exceptions to the hearsay rule applies. We believe, as did the trial court, that the statements were admissible under Rule 803(2) of the Arizona Rules of Evidence, 17A A.R.S.

Rule 803(2), Rules of Evidence, 17A A.R.S., upon which the court relied, is the excited utterance exception:

*Excited Utterance.*

A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition.

Rule 803(2), Rules of Evidence, 17A A.R.S.

The witness had just been shot. Even though the evidence is not sufficient to show he knew he was dying, he was certainly under "the stress of excitement"

caused by having been shot. The statements were properly admitted under rule 803(2) as an excited utterance. We find no error.

## IV

### CODEFENDANT'S OPINION AS TO DEFENDANT'S INTENT

At trial the codefendant Hein testified:

Q You mentioned that Dan showed some curiosity about this gun; is that correct?

A Yes.

Q Did that occur before Los Angeles?

A Yes, it did.

Q Was that gun almost like a toy or a new novel item to him?

A Yes.

Q And was he handling it or messing around with it from time to time?

A Before we left.

Q You were in the Ehrenberg store when the shooting occurred. Were you in a position where you could see what happened?

A No, I wasn't.

Q You were there just prior to the shooting and during the shooting, is that correct?

A Yes.

Q Do you have an opinion as to whether or not it was an intentional or accidental shooting?

MR. DAWLEY: I object. That calls for a conclusion.

THE COURT: Yes, the objection will be sustained.

Defendant contends that this testimony was admissible under our Rules of Evidence which state:

If the witness is not testifying as an expert, his testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding

of his testimony or the determination of a fact in issue.

Rule 701, Rules of Evidence, 17A A.R.S.

■ Codefendant Hein testified that at the time of the shooting he was unable to see the defendant. His opinion, if any, would not then be based upon his observations and was not helpful to understanding his testimony. We do not believe Rule 701 applies to the facts in this case. We find no error.

## V

## INSTRUCTIONS ON SECOND DEGREE MURDER AND MANSLAUGHTER

The codefendant Hein further testified he did not think that a shooting or a robbery would occur, because the defendant wasn't that kind of person:

Q Did you have any intent to rob that store when you walked in?

A No, I didn't.

Q In fact when the officer asked you, did you enter the Circle K with the intent to commit this robbery, your answer was—?

A Well, Dan did.

Q Did you know in fact before he entered that there was going to be a robbery?

A He was talking about it, but we always joke around.

On cross-examination by the prosecutor co-defendant Hein testified:

Q And right after he was shot, you went to the cash register to try and get them open; isn't that correct?

A Yes.

Q You went to both cash registers as a matter of fact, didn't you?

A Yes.

Q You were going after money, weren't you?

A Sort of.

Q You were going after money, weren't you?

A Yes.

Q Couldn't get the registers open, though, could you?

A No, because I don't know how to work them.

Q So you left without being able to take any money, is that right?

A Yes.

Defendant contends that the question of whether a robbery was intended at the time of the shooting was one properly for the jury. Defendant further contends that because there was a conflict in the evidence as to whether a robbery was intended at the time of the shooting, the felony murder rule would not have been applicable, and the jury would have been entitled to consider whether the shooting constituted murder in the second degree or even manslaughter. We do not agree.

■ A party is entitled to an instruction reasonably supported by the evidence. See *State v. Moreno*, 128 Ariz. 257, 261, 625 P.2d 320, 324 (1981). We find nothing, however, to indicate that this could have been second degree murder or manslaughter. Under the felony-murder rule, the homicide could only be first degree. As we have stated:

Under Arizona Law, however, there is no lesser included homicide offense of the crime of felony murder since the *mens rea* necessary to satisfy the premeditation element of first degree murder is supplied by the specific intent required for the felony. (citation omitted) It was not error to refuse defendant's requested instructions.

*State v. Arias*, 131 Ariz. 441, 443–44, 641 P.2d 1285, 1287–88 (1982). In light of the defendant's statements, there is sufficient evidence to support the trial court's finding that the specific intent required for commission of the robbery existed. We find no error.

We have conducted an independent review of the record pursuant to A.R.S. § 13-4035 for fundamental error and find none.

Affirmed.

HOLOHAN, C.J., GORDON, V.C.J., and HAYS and FELDMAN, JJ., concur.