43 P.3d 188

**The STATE of Arizona, Appellee,**

v.

**Rodney Joseph GANT, Appellant.**

**No. 2 CA–CR 2000–0430.**

Court of Appeals of Arizona, Division 2, Department A.

March 29, 2002.

Janet Napolitano, Arizona Attorney General, by Randall M. Howe and Eric J. Olsson, Tucson for appellee.

Law Offices of Thomas Jacobs, by Thomas Jacobs, Tucson for appellant.

## OPINION

BRAMMER, Presiding Judge.

¶1 After a jury trial, appellant Rodney Gant was found guilty of unlawful possession of cocaine for sale and unlawful possession of drug paraphernalia. The trial court sentenced him to concurrent, mitigated prison terms, the longest of which was three years. Because we agree with Gant that the trial court erred in denying his motion to suppress evidence, we reverse his convictions.

### Standard of Review and Background

¶2 Gant argues that the trial court erred in denying his motion to suppress a handgun and a plastic bag of cocaine found when his vehicle was searched after his arrest, asserting that the warrantless search violated his Fourth Amendment rights. When reviewing a trial court's ruling on a motion to suppress evidence based on an alleged Fourth Amendment violation, we defer to the court's factual findings but review de novo mixed questions of law and fact. *State v. Wyman*, 197 Ariz. 10, 3 P.3d 392 (App.2000). Because warrantless searches are presumptively unreasonable and unconstitutional under the Fourth Amendment, the state bears the burden of proving the lawfulness of the acquisition of evidence seized without a warrant. *Rodriguez v. Arellano*, 194 Ariz. 211, 979 P.2d 539 (App.1999); *see* *also State v. Valle*, 196 Ariz. 324, 996 P.2d 125 (App.2000). In determining whether the state has carried that burden, we consider only the evidence presented at the suppression hearing. *See State v. Sanchez*, 200 Ariz. 163, 24 P.3d 610 (App.2001). And, we view that evidence in the light most favorable to sustaining the trial court's ruling. *Id.*

¶3 At the hearing on Gant's motion to suppress, the court stated:

Are any of the facts in issue? It seemed to me that from your respective briefs, that there didn't seem to be any disagreement. As I understand the facts—and let me repeat what I understand they are: That this arose out of a report of possible narcotic activity; ... police went to the residence, knocked on the door. The defendant answered....

. . . .

... [The police] ran a computer check on Rodney Joseph Gant and found that he was wanted on a suspended driver's license and, also, an outstanding warrant for failure to appear.

. . . .

... [The police] left and then came back to the residence, found a man and a woman around the residence. The woman had a crack pipe. The man, they didn't apparently find any contraband on him. Then the defendant arrived, driving a vehicle, and the officer, as the car pulled into the driveway, shined his flashlight into the car, recognized Mr. Gant as the individual he had previously met at the door and identified him as Mr. Gant.

And as the officer was walking toward the vehicle, Mr. Gant got out of the vehicle and started walking toward the officer when the officer called him by name, and he responded that that was who he was. And the officer took him in custody for the outstanding warrant and suspended driver's license, having seen him operating a motor vehicle.... [T]here's no question that [the officer] could legally arrest and did lawfully arrest the defendant on the outstanding warrant and for operating a motor vehicle without a driver's license.

Mr. Gant was removed from the vehicle—from the vicinity of the vehicle to the officer's patrol car and placed in the back of the patrol car, and the officers then did a search of the defendant's vehicle, found a weapon and found the jacket. And, apparently, feeling the jacket, felt something that they felt might be drugs and took it out of the pocket and found cocaine.

¶ 4 Gant's counsel stated that, "if the State concedes those are the facts, I think those are facts sufficient to proceed on the motion." The prosecutor replied: "I have no disagreement with the facts. I'd be happy to submit, also, on my pleading as well." Consequently, the parties did not introduce any evidence at the suppression hearing either in support of or in opposition to Gant's motion.

¶ 5 In his motion to suppress the evidence found in his vehicle, Gant did not contest the lawfulness of his arrest but, rather, argued only that the ensuing warrantless search of his vehicle was illegal because no exceptions to the Fourth Amendment's warrant requirement applied. The state argued that the search was lawful because it had been conducted incident to Gant's arrest or, alternatively, that, because the police had probable cause to search his vehicle, a warrantless search was permissible under the automobile exception to the Fourth Amendment's warrant requirement. The trial court denied Gant's motion, finding that the search of the car was lawful because it was a search incident to his arrest. We disagree.

## Warrantless Search Incident to Arrest

■ ¶ 6 In *Chimel v. California*, 395 U.S. 752, 763, 89 S.Ct. 2034, 2040, 23 L.Ed.2d 685, 694 (1969), the Supreme Court held that, when police make a lawful arrest, they may, without a warrant, search the person in custody as well as the "area from within which

he might gain possession of a weapon or destructible evidence." Applying that principle to a situation in which the person arrested had been occupying a vehicle when police initiated contact with him, the Court later held that officers may search the entire passenger compartment of a vehicle, and all containers therein, as a "contemporaneous incident" of a lawful arrest. *New York v. Belton*, 453 U.S. 454, 460, 101 S.Ct. 2860, 2864, 69 L.Ed.2d 768, 775 (1981).[1] This rule, denominated "bright-line" by one of the dissenting justices, *id.* at 463, 101 S.Ct. at 2866, 69 L.Ed.2d at 777, was premised on the generalization, rather than the probability in a given case, that objects within a vehicle's passenger compartment are within an arrestee's reach. Even so, the Court specifically stated that its holding was limited to the "particular and problematic" context in which it had arisen, and did not "alter[ ] the fundamental principles established in the *Chimel* case regarding the basic scope of searches incident to lawful custodial arrests." 453 U.S. at 460 n. 3, 101 S.Ct. at 2864 n. 3, 69 L.Ed.2d at 775 n. 3; *see also State v. Lopez*, 198 Ariz. 420, 10 P.3d 1207 (App.2000).

¶ 7 Taking *Belton* one step further, the Ninth Circuit Court of Appeals held that a vehicle search conducted five minutes after an arrestee had been removed from both the automobile and the scene qualified as a search incident to arrest under *Belton* because the search had "occurred during a continuous series of events closely connected in time to the arrest." *United States v. McLaughlin*, 170 F.3d 889, 891 (9th Cir. 1999); *see also United States v. Doward*, 41 F.3d 789 (1st Cir.1994).

¶ 8 The state contends that the question of whether *Belton* applies to Gant's situation "appears to be a matter of first impression in Arizona."[2] We agree and conclude that, not

---

1. In *Belton*, the Court also used the term "recent occupant," which, when read in context, clearly refers to someone who, once arrested and removed from a vehicle, necessarily becomes its "recent occupant." 453 U.S. at 460, 101 S.Ct. at 2864, 69 L.Ed.2d at 775. Some courts have, in our opinion, misconstrued this language to justify extending *Belton's* reach to cases in which a person voluntarily exited a vehicle before the police initiated any contact. *See, e.g., Glasco v.*

*Commonwealth*, 257 Va. 433, 513 S.E.2d 137 (1999).

2. In contrast to that assertion in its brief, at oral argument in this court, the state referred to this as a "run-of-the-mill *Belton* case," citing *State v. Crivellone*, 138 Ariz. 437, 675 P.2d 697 (1983), and *State v. Hanna*, 173 Ariz. 30, 839 P.2d 450 (App.1992). *Crivellone and Hanna*, however, both involved situations in which officers

only are *Belton* and *McLaughlin* both factually distinguishable from this case, but also that the rationale underlying those cases does not extend to this situation. We further conclude, therefore, that the warrantless search of Gant's vehicle was not a lawful search incident to his arrest.

¶ 9 In *Belton,* an officer stopped the vehicle in which Belton was a passenger because the officer had seen the vehicle speeding. In *McLaughlin,* an officer stopped the vehicle because it had an illegally tinted rear window. Here, in contrast, the facts as summarized by the trial court do not show, nor can we infer, that Gant was or should have been aware either of the police presence at the residence as he approached it or of the light the officer shined into his vehicle. And if, as the state suggested at oral argument in this court, the trial court implicitly drew either inference, we conclude it erred in doing so because neither inference is reasonably suggested by these facts. What is clear from these facts, however, is that Gant voluntarily—that is, not in response to police direction—stopped his vehicle, exited it, and began to walk away from it. We believe that this factual distinction is significant and requires a different result than that in *Belton* and *McLaughlin.*

¶ 10 We agree with the holding of *United States v. Strahan,* 984 F.2d 155 (6th Cir. 1993), in which the Sixth Circuit Court of Appeals determined that *Belton* was inapplicable to a situation in which an arrestee had been apprehended approximately thirty feet from his automobile because the police had not initiated contact with him until that time and, therefore, he was not an occupant of the vehicle. The court instead held that the test outlined in *Chimel* applied. We further agree with the reasoning expressed in *United States v. Fafowora,* 865 F.2d 360 (D.C.Cir. 1989), in which the court held inapplicable the rationale underlying *Belton's* bright-line

rule allowing police to search the entire passenger compartment of a vehicle—that it is, at least hypothetically, within the reach of its arrested occupant—to a case in which the police had first encountered the arrestee outside the automobile. In such cases, the court said, the twin concerns of officer safety and evidence preservation that justify, at least theoretically, the search-incident-to-arrest exception to the warrant requirement discussed in *Chimel* disappear because the vehicle's passenger compartment is not available to the arrestee at the time the police encounter or arrest the person. Other courts have expressed similar reasoning and have reached similar results. *Lewis v. United States,* 632 A.2d 383 (D.C.1993); *Thomas v. State,* 761 So.2d 1010 (Fla.1999); *State v. Foster,* 127 Idaho 723, 905 P.2d 1032 (Ct.App. 1995); *People v. Stehman,* 324 Ill.App.3d 54, 257 Ill.Dec. 607, 753 N.E.2d 1233 (2001); *Commonwealth v. Santiago,* 410 Mass. 737, 575 N.E.2d 350 (1991); *People v. Fernengel,* 216 Mich.App. 420, 549 N.W.2d 361 (1996).

¶ 11 By its own terms, *Belton* is limited to the particular factual situation in which it arose. Accordingly, it applies only when "the officer initiates contact with the defendant, either by actually confronting the defendant or by signaling confrontation ... while the defendant is still in the automobile, and the officer subsequently arrests the defendant (regardless of whether the defendant has been removed from or has exited the automobile)." *United States v. Hudgins,* 52 F.3d 115, 119 (6th Cir.1995); *see also Thomas.* We believe that "the *Belton* objectives and Fourth Amendment principles are best served by limiting *Belton's* " reach in this way. *Foster,* 905 P.2d at 1039.[3] However, we emphasize that, when police attempt to initiate contact by either confronting or signaling confrontation, a vehicle's occupant cannot avoid *Belton's* application and create a haven for contraband simply by exiting the

stopped a suspect's vehicle, which was not the case here. The state's reliance on these cases, therefore, is misplaced.

**3.** We acknowledge that not all courts agree with this construction of *Belton. See, e.g., United States v. Sholola,* 124 F.3d 803, 817 (7th Cir. 1997) (extending *Belton* to a case in which the

defendant was not an occupant but was " 'positively linked' " to the vehicle at the time of his arrest), *quoting United States v. Adams,* 26 F.3d 702, 705 (7th Cir.1994); *United States v. Snook,* 88 F.3d 605 (8th Cir.1996); *United States v. Schecter,* 717 F.2d 864 (3d Cir.1983); *see also Glasco.*

vehicle when officers are seen or approach. If the record shows that police overtly initiated contact before a suspect exits a vehicle and the suspect is subsequently arrested, the vehicle may nonetheless be searched without a warrant incident to an arrest under *Belton. See, e.g., United States v. Mans*, 999 F.2d 966 (6th Cir.1993).

¶ 12 The two cases the state asserts "are not meaningfully distinguishable" from this case, *State v. Wanzek*, 598 N.W.2d 811 (N.D. 1999), and *People v. Savedra*, 907 P.2d 596 (Colo.1995), can, in fact, be distinguished on this very basis. In *Wanzek*, the arresting officer testified that, when he had pulled up next to the defendant in his patrol car, she had "looked over at [him], looked straight ahead, backed the vehicle up, and exited the vehicle." 598 N.W.2d at 813. And, in *Savedra*, the court stated that, because the defendant had been in his vehicle when he "first saw the police officer approach," it was "not unreasonable to assume that he exited the vehicle to avoid contact with the police officer." 907 P.2d at 599–600.

■ ¶ 13 In contrast, the summarized facts here do not show, nor can we infer, that the police attempted to initiate contact with Gant while he was still in his vehicle or that he had attempted to evade contact with the police by exiting his vehicle. Contrary to the state's assertion, we do not believe that, by shining a flashlight into Gant's vehicle, the officer necessarily initiated contact with him. These facts do not show the distance between Gant's vehicle and the officer, either when he shined the flashlight at Gant's car or when the officer approached it after Gant had exited it, or that a person in Gant's position would even have been aware that a light had been shined into the vehicle, much less who had shined it. Nothing shows or suggests that Gant looked in the direction of the light when it was shined or that he had seen officers or any other sign of police

activity at the residence, such as flashing emergency lights, marked police vehicles, or uniformed officers, either when he arrived at the residence or before he exited his vehicle. The record is also silent about the lighting in the areas where Gant parked his vehicle, those places where the officers were positioned when he arrived, and the spaces that separated those areas. Additionally, the record does not support a finding that Gant was or should have been aware of anyone's approach as he exited his vehicle.[4] Furthermore, nothing in the record shows that, by shining the light, the officer was attempting to signal his intent to confront Gant. Rather, the officer might simply have been attempting to ascertain the identity of the vehicle's occupant as he observed the vehicle approach the residence. Lastly, the record does not reflect the time each of these various events consumed nor the time intervals separating them.

¶ 14 It is unfortunate that the record was not based on witnesses' testimony, under both direct and cross-examination but, rather, on the trial court's apparently extemporaneous summary of the facts as it understood them from the materials contained in Gant's motion to suppress and the state's opposition to it. We believe the better practice is to have the facts flow from witness testimony and other admitted evidence or to be stated in a written stipulation of the parties. Indeed, the law favors a stipulation of facts, especially if the stipulation is carefully considered and crafted in advance of a hearing or trial, that would be binding both below and on appeal. *See State v. Sorrell*, 109 Ariz. 171, 506 P.2d 1065 (1973); *Bennett ex rel. Arizona State Personnel Comm'n v. Beard*, 27 Ariz.App. 534, 556 P.2d 1137 (1976). We can only observe that many of the critical facts that bear upon resolution of the contested issues would likely have been addressed had the parties questioned wit-

---

4.  Citing the following statements the trial court made when denying Gant's motion to suppress, the state asserts that the court made implicit factual findings that Gant had been aware of the police presence at the residence and had been only a few steps away from the officer when contact occurred. The court stated: "I don't think [Gant] can limit the scope of the search by vacating the car faster than the officers can get up to the car," and "[t]he fact that Mr. Gant was fast enough or clever enough to get out of the vehicle I don't think limits the officer's ability to search the vehicle." But, nothing in the trial court's factual summary, nor any reasonable inferences therefrom, supports those remarks.

nesses. We appreciate a trial court's attempt to conserve judicial resources by acknowledging its understanding of the factual background and the parties' relative positions at the outset of a contested matter. But, this does not relieve the party bearing the burden of persuasion, here the state, from ensuring that the record contains adequate information for judicial decision-making at both the trial and appellate levels. *See State v. Rogers*, 186 Ariz. 508, 924 P.2d 1027 (1996) (stressing necessity of making factual record below in order for appellate court to decide fact-intensive issue and base holding on it).

¶ 15 Accordingly, the record before us does not support a finding that the police were attempting to initiate contact with Gant while he was in the vehicle either by confronting him or by signaling an intent to confront him, notwithstanding the officer's shining the flashlight. Therefore, the search of Gant's vehicle was outside the scope of *Belton*. *See Lewis*, 632 A.2d at 388 ("[A]ppellant had left the vehicle and [had] become a pedestrian before the police officer initiated contact with him; he was not an 'occupant' within the meaning of *Belton*."). Because the narrow *Belton* exception is inapplicable, the search must satisfy the *Chimel* test to have been a lawful search incident to Gant's arrest. *See Strahan; see also Fafowora*. Because the passenger compartment of his vehicle was not " 'within his immediate control' " at the time of his arrest, *Chimel*, 395 U.S. at 763, 89 S.Ct. at 2040, 23 L.Ed.2d at 694, the search was not conducted as an incident to his arrest. *Strahan; see also Fafowora*. Because the state failed to meet its burden of proving that the warrantless search of Gant's vehicle was a lawful search incident to his arrest, we must reverse the trial court's denial of his motion to suppress the evidence found in his vehicle unless the search can be justified by another exception to the Fourth Amendment's warrant requirement. *See Valle*.

5. In its answering brief, the state cites additional facts that were not included in those summarized by the trial court at the hearing on Gant's sup-

## Probable Cause

¶ 16 Because we can uphold a trial court's ruling on a motion to suppress if the court reached the correct result even though based on an incorrect reason, *State v. Nadler*, 129 Ariz. 19, 628 P.2d 56 (App.1981), we must consider the state's alternative argument that the police were justified in searching Gant's vehicle independent of the search-incident-to-arrest exception. The state asserts that, because Gant was present at a house where narcotics trafficking was suspected to be occurring and where the police had found a person with drug paraphernalia,[5] the police had probable cause to search Gant's vehicle under the automobile exception to the warrant requirement. *See State v. Weinstein*, 190 Ariz. 306, 947 P.2d 880 (App.1997) (police may search vehicle without warrant if vehicle readily mobile and if they have probable cause to believe it contains contraband). That exception, however, is inapplicable here.

¶ 17 The state has not cited any case, nor have we found any, in which the police were found to have probable cause to search a vehicle based on facts such as these. Based on the sparsely developed factual record before us on this issue, we must conclude that the police did not have probable cause to believe that Gant's vehicle contained contraband. Indeed, it would be inappropriate for us to do otherwise. *See Rogers*.

## Conclusion

¶ 18 In sum, the state failed to meet its burden of proving the legality of the warrantless search of Gant's vehicle. *See Valle; Rodriguez*. Therefore, the trial court erred in denying Gant's motion to suppress the evidence found in his vehicle. Because of our resolution of this issue, we need not address Gant's remaining argument on appeal. We reverse Gant's convictions and sentences.

FLÓREZ, J., concurs.

PELANDER, Judge, specially concurring.

pression motion. Therefore, we do not consider them in our analysis. *See Sanchez*.

¶ 19 I concur with the court's opinion but write separately to make several additional observations. Cases such as this are difficult and have produced disparate results around the country primarily because the law relating to warrantless vehicle searches after *Belton* has become so muddled. As Justice Lacy noted in her concurring opinion in *Glasco v. Commonwealth*, 257 Va. 433, 513 S.E.2d 137, 142 (1999) (Lacy, J., concurring):

> [N]othing in *Belton* specifically defined what circumstances qualified an arrestee as a "recent occupant." Consequently, from its inception, application of the so-called "bright line" *Belton* rule has not provided clear resolution of search issues in cases with facts that do not mirror the facts in *Belton* or the precise words of the rule.

¶ 20 The *Belton* rule was premised, at least theoretically, on concerns for officer safety and evidence preservation. *See New York v. Belton*, 453 U.S. 454, 457, 101 S.Ct. 2860, 2862, 69 L.Ed.2d 768, 773 (1981); *State v. Hanna*, 173 Ariz. 30, 32, 839 P.2d 450, 452 (App.1992). As routinely applied, however, the rule "may be invoked regardless of whether the arresting officer has an actual concern for safety or evidence." *United States v. McLaughlin*, 170 F.3d 889, 891 (9th Cir.1999). *See also Hanna; State v. Wanzek*, 598 N.W.2d 811 (N.D.1999); *Glasco*. As Judge Trott aptly noted in his concurring opinion in *McLaughlin:* "In our application of *Belton's* 'bright-line' [rule] ... the rationales behind the search incident to arrest exception have been abandoned, the purpose has been lost, and, as Chief Justice Rehnquist predicted, little certainty remains." 170 F.3d at 894 (Trott, J., concurring).

¶ 21 "The purposes behind *Belton* were two-fold: to create a single familiar standard to guide police officers in automobile searches and to eliminate the need for litigation in every case to determine whether the passenger compartment of the vehicle is within the scope of a search incident to arrest." *Wanzek*, 598 N.W.2d at 815. *See also Belton*, 453 U.S. at 458–60, 101 S.Ct. at 2863–64, 69 L.Ed.2d at 774–75; *Glasco*, 513 S.E.2d at 141. Based on the varying results of cases decided in the twenty years following *Belton*,

it is questionable whether those purposes have been achieved. And, I have some concerns that our ruling today, although correct on the very sparse, undeveloped record before us, may frustrate those purposes and incorporate unintended nuances into this already complicated Fourth Amendment arena. As the state points out, the fine lines that courts may have to draw in this area are problematic:

> [W]ould a suspect who has one foot in the vehicle and one on the ground be deemed "in" or "out" for purposes of *Belton?* Would that depend on whether some part of his body was still touching the seat? What if he had both feet on the ground but the door is still open and he's leaning into the passenger compartment—or just reaching in? What if he's sitting on the tailgate of a station wagon but his feet are touching the ground—could he merely stand up to render *Belton* inapplicable? What if the suspect is standing outside the vehicle but has left the engine running? ... [C]ould the initial contact [by police] be non-verbal, such as a signal by hand, whistle, or flashlight? Or, because an actual-occupancy concept necessarily depends on the suspect's precise physical location at the time of contact, would the initial contact have to involve at least the officer's present ability to make immediate physical contact? Under such a rule, given the endless variations in the facts that Fourth Amendment issues inevitably engender, suppression hearings on *Belton* searches could become extended mini-trials on factual minutiae, and the actions of police officers in the field would have no predictable legal consequences in the courtroom.

¶ 22 Regardless of whether those issues and concerns may be legitimate, this case does not raise any of them. Fourth Amendment determinations typically involve fact-intensive inquiries and, inevitably, line-drawing. And resolution of any such issues, of course, depends on analysis of specific facts actually presented in a particular case. Based on the record here, the state simply did not carry its burden of establishing the

248

legality of the warrantless search of Gant's vehicle.

¶ 23 Nonetheless, I agree with the state's protest that "police should not have to run a footrace to implement *Belton.*" *See Wanzek,* 598 N.W.2d at 815 ("Police officers should not have to race from their vehicles to the arrestee's vehicle to prevent the arrestee from getting out of the vehicle in order to conduct a valid search."); *Thomas v. State,* 761 So.2d 1010, 1014 (Fla.1999) ("[T]he arrest and subsequent search should not be invalidated merely because the defendant is outside the automobile. The occupants of a vehicle cannot avoid the consequences of *Belton* merely by stepping outside of the vehicle as the officers approach."). Indeed, our opinion expressly emphasizes that point. *See* ¶ 11, *supra.* I further note that we do not limit *Belton's* reach to cases in which police first initiate or attempt to initiate contact with the arrestee when he or she is in a *moving,* as opposed to a parked or otherwise stationary, vehicle.

¶ 24 Despite my concerns about the state of the law in this area, affirming the trial court's ruling here essentially would not only overlook, but also tacitly approve of the significant factual deficiencies in the record; minimize the state's burden of establishing the legality of this warrantless search; disregard the Supreme Court's cautionary note in *Belton* that it was "in no way alter[ing] the fundamental principles established in the *Chimel* case regarding the basic scope of searches incident to lawful custodial arrests," 453 U.S. at 460 n. 3, 101 S.Ct. at 2864 n. 3, 69 L.Ed.2d at 775 n. 3; and stretch the concept of "recent occupant" beyond *Belton's* intended, contextual meaning. *See Glasco,* 513 S.E.2d at 144 (Lacy, J., concurring) (noting that in all but one case cited in *Belton* on this point, "the arrestee was arrested while in the vehicle, and in all the cases the search of the vehicle occurred after the arrestees exited the vehicles at the direction of the police and while they were still within close proximity of the vehicles"). Accordingly, I concur that the trial court erred in denying Gant's motion to suppress.