839 P.2d 450

173 Ariz. 30

**STATE of Arizona, Appellee,**

v.

**David Douglas HANNA, Appellant.**

**No. 1 CA–CR 90–1939.**

Court of Appeals of Arizona, Division 1, Department E.

May 21, 1992.

Review Denied Nov. 17, 1992.

Grant Woods, Atty. Gen. by Paul J. McMurdie, Chief Counsel, Crim. Div., and Linda L. Knowles, Asst. Atty. Gen., Phoenix, for appellee.

Dean W. Trebesch, Maricopa County Public Defender by Carol A. Carrigan, Deputy Public Defender, Phoenix, for appellant.

OPINION

VOSS, Presiding Judge.

Just a few minutes before 3:00 a.m. on May 8, 1990, Officer Donald Peelman ("Peelman") was patrolling in his marked police car near 35th Avenue and Indian School Road in Phoenix, Arizona. This was the area he normally patrolled. He was headed southbound on 35th Avenue when he saw a vehicle driven by David Hanna.

Peelman discovered the registration sticker on the license plate of Hanna's vehicle was for April and had therefore expired eight days before. Peelman proceeded to pull appellant over into a well-lighted parking lot. Peelman stopped his patrol car about twenty-five feet behind appellant's parked vehicle. Appellant stepped out of his car and, upon request, presented Peelman with his driver's license, registration and proof of insurance. Peelman returned with appellant's driver's license to his patrol car to run a routine check on appellant. This check revealed that appellant's license had been suspended. Peelman arrested appellant for driving on a suspended license, handcuffed him and put him in the back of the patrol car.

Brian Murray ("Murray"), an officer called by Peelman to assist him, then stood next to the patrol car door while Peelman prepared to search appellant's vehicle. Before this search began, another officer, David Lucero ("Lucero"), arrived. Lucero and Peelman searched appellant's automobile, Peelman from the passenger's side and Lucero from the driver's side. Lucero found nothing. When Peelman got to the glove compartment, he found it locked. Peelman went back to the patrol car, where appellant sat handcuffed, and retrieved the key to the glove compartment from a bag he had put it in when appellant was arrested. Peelman proceeded to unlock the glove compartment. In the glove compartment Peelman found a small red canvas bag. Peelman opened this bag, which was closed by a velcro fastener, and in it found various drug paraphernalia and a black magnetic box. Peelman opened the black box and found three plastic bags which turned out to contain methamphetamine, a dangerous drug. Peelman then returned to where appellant sat handcuffed in the patrol car, and informed him that he was under arrest for possession of a dangerous drug. None

of the officers ever attempted to obtain a search warrant.

Before trial appellant made a motion to suppress the evidence seized from his glove compartment, arguing that the search which produced the evidence violated appellant's right under the United States and Arizona Constitutions.[1] After an evidentiary hearing on this motion, the court found that the search was "a valid one incidental to a lawful arrest...." A motion for reconsideration of the denial of appellant's motion to suppress was made during trial. Again the court denied appellant's attempt to suppress the evidence. Appellant was convicted by a jury. He filed this timely appeal arguing that the trial court erred in not suppressing the evidence seized from his locked glove compartment. We affirm the trial court.

▬ The fourth amendment to the United States Constitution requires that all searches be reasonable. *Scott v. United States*, 436 U.S. 128, 137, 98 S.Ct. 1717, 1723, 56 L.Ed.2d 168 (1978). The Arizona Constitution requires the same. Ariz. Const. art. 2, § 8. The general rule is that a search must be made pursuant to a search warrant to be considered reasonable. However, several well-defined exceptions to the general warrant requirement exist. *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576 (1967); *Coolidge v. New Hampshire*, 403 U.S. 443, 454–55, 91 S.Ct. 2022, 2031–32, 29 L.Ed.2d 564 (1971); *State v. Sardo*, 112 Ariz. 509, 513, 543 P.2d 1138, 1142 (1975). One of these exceptions allows the warrantless search of the passenger compartment of an automobile incident to the arrest of one of the occupants of the automobile. *New York v. Belton*, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981). The trial court, citing *Belton*, found that the warrantless search fell within the "incident to a lawful arrest" exception. For this reason, appellant's motion to exclude evi-

---

1. "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." United States Constitution amend. IV.

"No person shall be disturbed in his private affairs, or his home invaded, without authority of law." The Arizona Constitution, art. 2, § 8.

dence of the drugs found in his locked glove compartment was denied.

### Search Incident to Arrest

■ A police officer without a search warrant may conduct a search of an automobile incident to arresting an occupant of that automobile. *Belton,* 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768; *State v. Curiel,* 130 Ariz. 176, 634 P.2d 988 (App.1981). The disputed issue in this case is whether the scope of that search may extend to a locked glove compartment in that car.

■ The purpose of allowing a warrantless search under this exception is to ensure the safety of the officer and protect evidence from being intentionally destroyed. This purpose has been broadly read. In *Belton,* the court pointed out that searches under this exception are "valid because of the need 'to remove any weapons that [the arrestee] might seek to use in order to resist arrest or effect his escape' and the need to prevent the concealment or destruction of evidence." (Citations omitted.) 453 U.S. at 457, 101 S.Ct. at 2862. The *Belton* court then proceeded to observe that "the police may also examine the contents of any containers found within the passenger compartment, for if the passenger compartment is within reach of the arrestee, so also will the containers in it be within his reach." *Id.* at 460, 101 S.Ct. at 2864. In a footnote to the above sentence, the court defined container to include a "closed or open glove compartment." *Id.* at 460 n. 4, 101 S.Ct. at 2864 n. 4.

This language has been interpreted by several federal courts to uphold warrantless searches incident to arrest where the possibility of an arrestee's grabbing a weapon or evidence were equally as remote as appellant's chances here. *United States v. Hatfield,* 815 F.2d 1068, 1071 (6th Cir. 1987) (arrestee ordered to stand against wall and guarded by officer while other officer searched vehicle); *Davis v. Robbs,* 794 F.2d 1129, 1130–31 (6th Cir.1986) (arrestee handcuffed and placed in squad car prior to seizure of rifle in house), *cert. denied,* 479 U.S. 992, 107 S.Ct. 592, 93 L.Ed.2d 593 (1986); *United States v. Cot-*

*ton,* 751 F.2d 1146, 1147–48 (10th Cir.1985) (arrestees handcuffed and apparently guarded by officer while other officer searched vehicle); *United States v. Silva,* 745 F.2d 840, 847 (4th Cir.1984) (arrestees handcuffed and guarded prior to search of room for weapons), *cert. denied,* 470 U.S. 1031, 105 S.Ct. 1404, 84 L.Ed.2d 791 (1985); *United States v. Palumbo,* 735 F.2d 1095, 1096–97 (8th Cir.1984) (arrestee possibly handcuffed and definitely surrounded by several officers prior to search of room), *cert. denied,* 469 U.S. 934, 105 S.Ct. 332, 83 L.Ed.2d 268 (1984); *United States v. Roper,* 681 F.2d 1354, 1357–59 (11th Cir.1982) (arrestee handcuffed and led into room by officer prior to search), *cert. denied,* 459 U.S. 1207, 103 S.Ct. 1197, 75 L.Ed.2d 440 (1983); *United States v. Fleming,* 677 F.2d 602, 606–07 (7th Cir. 1982) (arrestee handcuffed and removed from immediately area prior to search); *Virginia Islands v. Rasool,* 657 F.2d 582, 588–89 (3rd Cir.1981) (arrestee handcuffed and removed from vehicle prior to search).

Because we find that *Belton* and its progeny apply to this case, we need not address the claim that it was also a valid inventory search. Also, as we believe any "extension of ... [the state] Constitution ... is a matter left for the Arizona Supreme Court", we resist the temptation. *State v. Calabrese,* 157 Ariz. 189, 191, 755 P.2d 1177, 1179 (App.1988). We affirm.

EUBANK, J., concurs.

CLABORNE, Judge, specially concurring.

I concur in the result reached by the majority because this seems to be the federal rule. *See Hatfield, et al.* However, the logic of extending a search incident to arrest to a locked glove compartment in order to protect the safety of police officers and the integrity of evidence from an arrestee who is handcuffed in the back of a police car twenty-five feet from his own vehicle and not in possession of the key to unlock the glove compartment escapes me.

Also, I must agree with the majority only because I believe that this court should not

be the one to extend the protection of the Arizona Constitution, art. 2, § 8, to give greater protection to privacy interests in automobiles than is given under the United States Constitution's fourth amendment. This should be left up to the Arizona Supreme Court.

Although *State v. Calabrese*, 157 Ariz. 189, 191, 755 P.2d 1177, 1179 (App.1988), pointed out that "any further extension of our own constitution [Arizona Constitution, art. 2, § 8] to limit or circumscribe the standards set forth in *United States v. Robinson* [414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973)] is a matter left for the Arizona Supreme Court", I do not necessarily agree. The Arizona Court of Appeals frequently decides violations of the Arizona Constitution, and I see no reason to defer in this case in spite of what appears to be the federal rule.

However I write to register my discontent with an exception to the warrant requirement which *in this case*, defies logic, common sense or justification. The police arrested Hanna for two traffic violations, handcuffed him, and placed him in the back seat of a police car which was located twenty-five feet behind Hanna's vehicle. The police then conducted a warrantless search of Hanna's vehicle, found nothing, and attempted to search a locked glove compartment. They went back to the patrol car to obtain the key to the locked glove compartment and then returned to conduct the warrantless search. The reason for the warrant requirement is well-stated in *Trupiano v. United States*, 334 U.S. 699, 705, 68 S.Ct. 1229, 1232, 92 L.Ed. 1663 (1948):

> [The] rule [that] rests upon the desirability of having magistrates rather than police officers determine when searches and seizures are permissible and what limitations should be placed on such activities. In their understandable zeal to ferret out crime and in the excitement of the capture of a suspected person, officers are less likely to possess the detachment and neutrality with which the constitutional rights of the suspect must be viewed.

Furthermore, the requirement that the police obtain a warrant helps "prevent hindsight from coloring the evaluation of the reasonableness of a search or seizure." *United States v. Martinez–Fuerte*, 428 U.S. 543, 565, 96 S.Ct. 3074, 3086, 49 L.Ed.2d 1116 (1976).

It has long been held that exceptions to the general warrant requirement for a valid search must be narrowly tailored to the circumstances that justify their creation. *Florida v. Royer*, 460 U.S. 491, 499–500, 103 S.Ct. 1319, 1324–1325, 75 L.Ed.2d 229 (1983).

As the majority points out, the need for the exception to the warrant requirement grew from our desire to remove any weapons or evidence from that area which an arrestee might access and either resist arrest, effect an escape, or destroy evidence. *Chimel v. California*, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969).

The state of Washington recognized the failing of the *Belton* approach when it applied its state constitution to this issue. That supreme court said that police may search an automobile for weapons or destructible evidence during the arrest process and immediately afterward, but, "... if the officers encounter a locked container or a locked glove compartment, they may not unlock and search either container without obtaining a search warrant." *State v. Stroud*, 106 Wash.2d 144, 720 P.2d 436, 441 (1986).

The *Stroud* court described the reason behind its holding quite clearly. They reasoned that there is a greater expectation of privacy indicated when one locks something into a container, and that the danger of the arrestee destroying or hiding evidence located within a container or grabbing a weapon from a container is minimized when that container is locked. *Id.* I see nothing wrong with this reasoning.

Since, to me, the federal rule as applied here lacks any practical wisdom, we can and should turn to our own state constitution.

Arizona has previously recognized a greater protection for privacy under our state constitution than exists under the fed-

eral constitution. *State v. Bolt,* 142 Ariz. 260, 689 P.2d 519 (1984) ("search" of home may be valid under federal constitution but not Arizona Constitution art. 2, § 8); *State v. Ault,* 150 Ariz. 459, 466, 724 P.2d 545, 552 (1986) (refusal to extend inevitable discovery doctrine into defendant's home based on art. 2, § 8 of Arizona Constitution); *See also, State v. Martin,* 139 Ariz. 466, 475, 679 P.2d 489, 498 (1984), and *State v. Hendrix,* 165 Ariz. 580, 582, 799 P.2d 1354, 1356 (App.1990). As one court recently said:

A state court decision that rejects Supreme Court precedent, and opts for greater safeguards as a matter of state law, does indeed establish higher constitutional standards locally. But that is a perfectly respectable and legitimate thing to do, and does not in any sense signal a return to the Articles of Confederation. Moreover, with the federal Bill of Rights having been drawn from state constitutional antecedents, there is naturally some equivalency between charters, but no less reason for courts to enforce the respective constitutional guarantees.

Time and again in recent years, the Supreme Court as well as its individual Justices have reminded state courts not merely of their right, but also of their responsibility to interpret their own constitutions, and where in the state courts' view those provisions afford greater safeguards than the Supreme Court would find, to make plain the state decisional ground so as to avoid unnecessary Supreme Court review.

*People v. Scott,* 79 N.Y.2d 477, 583 N.Y.S.2d 920, 593 N.E.2d 1328, Nos. 6, 27, 1992 WL 62774 (N.Y. April 2, 1992), KAYE, J. (concurring).

If fairness and common sense has any place in the law, then art. 2, § 8 of our state constitution should forbid this type of warrantless intrusion.