55 P.3d 102

STATE of Arizona, Appellant,

v.

Donald Gene DEAN, Appellee.

No. 1 CA–CR 01–0827.

Court of Appeals of Arizona, Division 1, Department C.

Oct. 17, 2002.

Janet A. Napolitano, Attorney General, by Billie A. Rosen, Section Chief Counsel, Drugs & Violent Crimes Section and Deborah A. Schumacher, Assistant Attorney General, Phoenix, Attorneys for Appellant.

James J. Haas, Maricopa County Public Defender, by Garrett W. Simpson, Deputy Public Defender, Phoenix, Attorneys for Appellee.

## OPINION

IRVINE, Judge.

¶ 1 The State appeals from the trial court's order granting a motion to suppress evidence against Donald Dean found in the search of a Jeep. The State argues that the search was lawful because Dean abandoned the vehicle, because the vehicle was searched incident to Dean's arrest, or because the search of the Jeep was a valid inventory search. We hold that, because the police officers confronted the defendant while he was driving the vehicle, the defendant left the vehicle in an attempt to evade the police, and the officers searched the vehicle immediately after arresting the defendant, the search of the vehicle was incident to the arrest and was therefore lawful. We conclude that the trial court erred and we reverse and remand.

## FACTS AND PROCEDURAL HISTORY

¶ 2 Phoenix Police Officer David Hopkins testified that the Neighborhood Enforcement Team ("NET") had information about a felony arrest warrant for Dean, who was allegedly residing at a house on East Cholla and driving a gray four-door Jeep Cherokee. Shortly before 6:00 p.m., Officer Hopkins and other members of NET went to the residence. Officer Hopkins watched the house from an unmarked vehicle while other officers in marked cars waited out of sight. Approximately five minutes after parking, Officer Hopkins saw a female move a black

Corvette from the driveway to the street and a light-colored Jeep back out of the garage. Officer Hopkins told the other officers that the driver might have matched the description of Dean. He and the officers in one marked car began to follow the Jeep as it drove north on 32nd Street. After the Jeep turned into a gas station and then turned south on 32nd Street, the officers in the marked car briefly turned on the overhead lights. The Jeep then returned to the driveway of the home on Cholla. Officer Hopkins saw the driver leave the Jeep and run into the garage. Officer Erick Fenner, one of the officers in a marked car, took the keys out of the ignition of the Jeep. For safety reasons, the officers did not enter the house until other officers arrived to assess the situation and protect anyone who might be in danger. The officers went into the backyard, secured the house, and waited for the Special Assignment Unit ("SAU").

¶ 3 Detective Christopher Luebkin of the SAU then arrived at the residence. Patrol officers advised him that the person in the house had "a particularly high violence potential" and that there may have been a weapon in the house. He and eight members of the SAU entered the house to look for Dean. Finding no one in the rooms of the house, the police decided to look in the attic with a mirror attached to a pole that would allow them to see without making targets of themselves. As Detective Luebkin pushed upward on the attic door with the mirror, the door "closed as if someone was pushing on it." Detective Luebkin then told the person that the Phoenix Police Department was in the house and that the SAU would use chemical munitions or a police dog to get the person out of the attic if necessary. Dean then came down out of the attic and Detective Luebkin handcuffed him and had another SAU officer escort him outside.

¶ 4 Officer Michael Wilcox, a member of NET, rode in one of the marked vehicles that accompanied Officer Hopkins. Officer Wilcox testified that Dean was handcuffed and escorted to the front door where he was searched and escorted to a patrol car. Officer Wilcox and Officer Fenner then searched the Jeep. Officer Wilcox testified that when

he searched the Jeep it was unlocked. He further stated that he "searched [the Jeep] incident to [Dean's] arrest ... and ... looked for any evidence." He said that "it's also [Phoenix Police Department] policy to look into a vehicle for any valuables that could be there that, if we leave in the vehicle, we have to document." Officer Wilcox testified that he had followed the inventory policy until he found what he believed to be components of a methamphetamine lab. Due to safety concerns, he and his sergeant then called the Drug Enforcement Bureau to take custody of the Jeep and its contents.

¶ 5 The State charged Dean by information with one count of possession of equipment or chemicals for the manufacture of dangerous drugs, one count of manufacture of dangerous drugs, one count of possession of dangerous drugs for sale, and one count of possession of drug paraphernalia. The defendant filed a motion to suppress "all evidence seized from the gray Jeep Cherokee ... as the result of an unlawful search and seizure." After briefing, testimony, and oral argument, the trial court found that Dean's arrest and the search of the Jeep took place two and a half hours after Dean had left the car, and was therefore not a search incident to arrest. The trial court further found that the Jeep was not abandoned because it had been returned to the driveway from which it had come. Finally, the trial court determined that, based on Officer Wilcox's testimony that he was searching the Jeep for evidence, the search was not an inventory search. The trial court granted the motion and suppressed all evidence obtained from the search of the Jeep. The State timely appealed.

## DISCUSSION

¶ 6 On appeal the State argues that the trial court erred by granting the motion because Dean had abandoned the Jeep and relinquished his expectation of privacy, because the search was incident to Dean's arrest, or because the search was a valid inventory search. "We will not reverse a trial court's ruling on a motion to suppress absent 'clear and manifest error or ... an abuse of discretion.' " *State v. Lopez*, 198 Ariz. 420,

421, ¶ 7, 10 P.3d 1207, 1208 (App.2000) (quoting *State v. Jarzab*, 123 Ariz. 308, 312, 599 P.2d 761, 765 (1979)). We review the trial court's legal determinations de novo but defer to the trial court's factual findings. *Lopez*, 198 Ariz. at 421, 10 P.3d at 1208; *see also State v. Gant*, 202 Ariz. 240, 242, ¶ 2, 43 P.3d 188, 190 (App.2002). "Because warrantless searches are presumptively unreasonable and unconstitutional under the Fourth Amendment, the state bears the burden of proving the lawfulness of the acquisition of evidence seized without a warrant." *Id.* When determining whether the State has met its burden, we view the evidence in the light most favorable to upholding the trial court's ruling. *Id.*

■ ¶ 7 The United States Supreme Court has held that "when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile." *New York v. Belton*, 453 U.S. 454, 460, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981) (footnotes omitted). The purpose of the search of a vehicle incident to an arrest of the occupant is "to ensure the safety of the officer and protect evidence from being intentionally destroyed." *State v. Hanna*, 173 Ariz. 30, 32, 839 P.2d 450, 452 (App.1992); *Belton*, 453 U.S. at 457, 101 S.Ct. 2860. In establishing this rule, however, the Court emphasized the practicality of a bright-line rule as opposed to a fact-intensive standard. *Id.* at 458–61, 101 S.Ct. 2860. Police officers "have only limited time and expertise to ... balance the ... interests involved," and therefore require a simple standard. *Id.* at 458, 101 S.Ct. 2860 (quoting *Dunaway v. New York*, 442 U.S. 200, 213–14, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979)). Additionally, the lack of a single standard had resulted in conflicting rulings among courts. *Id.* at 459, 101 S.Ct. 2860. Individuals should also "know the scope of [their] constitutional protection." *Id.* at 460, 101 S.Ct. 2860.

■ ¶ 8 The rule allowing the search of a vehicle incident to the arrest of its occupant also extends to containers within the vehicle, even if the containers "could hold neither a weapon nor evidence of the criminal conduct for which the suspect was arrested." *Id.* at

461, 101 S.Ct. 2860. This is so because "[t]he authority to search ... while based upon the need to disarm and to discover evidence, does not depend on what a court may later decide was the probability in a particular arrest situation that weapons or evidence would in fact be found upon the person of the suspect." *Id.* (quoting *United States v. Robinson*, 414 U.S. 218, 235, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973)). Other courts have established that the officer may search the vehicle after the suspect has been removed. *See, e.g., Hanna*, 173 Ariz. at 32, 839 P.2d at 452 (citing federal cases upholding warrantless searches where the arrestee was removed from the area before the search). If the search is "too remote in time and place," however, a warrant is required. *State v. Madden*, 105 Ariz. 383, 385, 465 P.2d 363, 365 (1970) (holding that when the defendants were taken into custody and removed from the scene of arrest, the officers could have obtained a warrant and the search was not justified).

■ ¶ 9 If an arrestee is not an occupant of the vehicle when the police officer initiates contact, the officer may not constitutionally search the vehicle as a search incident to the arrest. *Gant*, 202 Ariz. at 244, ¶ 10, 43 P.3d at 192 (agreeing with courts in other jurisdictions). A decision from Division Two of this Court has determined that the *Belton* rule "applies only when 'the officer initiates contact with the defendant ... while the defendant is still in the automobile, and the officer subsequently arrests the defendant (regardless of whether the defendant has been removed from or has exited the automobile).'" *Id.* at 244, ¶ 11, 43 P.3d at 192 (quoting *United States v. Hudgins*, 52 F.3d 115, 119 (6th Cir.1995)).

■ ¶ 10 *Gant* noted, however, that the suspect may not evade a search by leaving the vehicle before the officers arrest him. 202 Ariz. at 244–45, ¶ 11, 43 P.3d at 192–93 ("[A] vehicle's occupant cannot avoid *Belton's* application and create a haven for contraband simply by exiting the vehicle when officers are seen or approach."); *see also Hudgins*, 52 F.3d at 119 (concluding that if the officer confronts the arrestee while he or she

is still in the vehicle, a search incident to arrest is valid even if the arrestee is not in the vehicle at the time of arrest). We conclude that such a rule is in keeping with the simple standard established by the United States Supreme Court in *Belton:* if an officer confronts the occupant of a vehicle and then lawfully arrests that occupant, the officer may search the vehicle incident to the arrest of that occupant.

¶ 11 In the present case, the trial court premised its ruling that the search was not incident to arrest on the finding that the arrest and the search were in different locations, two and a half hours apart. We note, however, that the officers began following Dean immediately after he left the driveway and used their overhead lights to signal him when he turned around in the gas station. Instead of stopping, Dean returned to the driveway, left the Jeep, ran into the house, and hid in the attic before he was arrested. The length of time between the officers signaling him from their car and the search of the Jeep was a result of Dean's attempt to evade them. The officers would have arrested Dean based on his felony warrants had he pulled over when the officers signaled him from the marked car. Once Dean entered the house, however, the officers were forced to call other officers to investigate further and ensure the safety of themselves and bystanders before following Dean into the house and arresting him.

¶ 12 We conclude that this circumstance is the precise situation contemplated by *Gant.* Dean cannot evade the search of the Jeep and the discovery of contraband in his vehicle by parking the Jeep and running into a house as soon as he is confronted by a police officer. The search, therefore, was incident to his arrest and constitutionally sound. Because we find that the search was justified as a search incident to arrest, we need not consider the State's other arguments that Dean had abandoned the Jeep and that the search was a valid inventory search.

## CONCLUSION

¶ 13 We conclude that the search of the Jeep was incident to Dean's arrest. The motion to suppress evidence obtained from the Jeep should have been denied. We reverse and remand for proceedings consistent with this opinion.

CONCURRING: JEFFERSON L. LANKFORD, Presiding Judge, and SHELDON H. WEISBERG, Judge.